ÆTNA FINANCE CORPORATION, Respondent, *v.* REX HEDWIG LABORATORIES, INC., Appellant.

No opinion. Present — Dowling, P. J., Finch, McAvoy, Martin and O'Malley, JJ.; Finch, J., dissents.

FINCH, J. (dissenting). From a judgment in a replevin action awarding to the plaintiff certain motion picture films free of a lien claimed by the defendant, the latter appeals. The main question presented is whether defendant has a lien upon these films as matter of law because of a written agreement to which plaintiff and defendant and two distributing companies were parties. Plaintiff owns certain negative films. Defendant operated a laboratory, wherein positive prints were made and other services performed looking towards the merchandising of these negatives. The agreement provides, in brief, as follows: That the plaintiff was the owner of eleven original negatives in the possession of Horsley Laboratories of Los Angeles, upon which negatives this laboratory had a lien dependent upon possession for the repayment of the sum of $10,700; that the plaintiff would cause Horsley immediately to ship the negatives, with instructions to the express company to collect from the defendant upon delivery of the negatives, and the defendant covenanted that it would pay this amount and take possession of the negatives;

that the defendant should thereupon become entitled to retain and hold possession of the negatives for the following purposes: (a) For the repayment of the sum paid to the Horsley Laboratories, and (b) for the purpose of making positive prints from time to time and at such times and in such numbers as it should hereafter be required to produce upon order of the two distributing companies and should deliver said prints when so made to one of the distributing companies; that the plaintiff should keep the negatives while in the possession of the defendant covered by insurance against any loss as the result of fire, theft, burglary or water damage for the full insurable value, losses, if any, under said policies to be payable to the plaintiff or the defendant, as their interest may appear; that after the sum which was owed Horsley shall have been repaid to the defendant, the latter should continue to hold the negatives as the depository agent of the plaintiff and for the purpose of enabling it to comply with the written instructions of the two distributing companies with reference to the making of such positive prints as may be from time to time required. The plaintiff agreed to repay to the defendant, together with interest at six per cent per annum until paid, the amount paid by the defendant to Horsley, and that there should also be paid by plaintiff to defendant the further sum of $1,000 " as a service charge for all and singular such services as may be rendered by said Rex Hedwig Laboratories, Inc., to and for the use and benefit of said Ætna Finance Corporation, pursuant to the terms and provisions hereof, including the services rendered as depository agent, above specified; " that one of the distributing companies should at least semi-annually give a report, in writing, to the plaintiff of all moneys received by it from each separate exchange in connection with the productions herein mentioned; that the defendant should within fifteen days from and after the first production of positive prints from said negatives report in writing direct to Ætna Finance Corporation the number of positive prints made and delivered in the said period immediately preceding; and that said defendant should at least every fifteen days thereafter report, in writing, direct to Ætna Finance Corporation the number of positive prints made and delivered during the period immediately preceding, and continue to make such reports at the intervals stated while this agreement is in force and effect, and the Rex Hedwig Laboratories, Inc., thereby authorized and empowered Ætna Finance Corporation to make any examination the latter corporation may desire of the books and records of said Rex Hedwig Laboratories, Inc., for the purpose of ascertaining and verifying the number of positive prints actually made and delivered. It is further provided that the title of the negatives shall at all times remain in the plaintiff; and that nothing in the agreement shall be construed to affect the passing of any title to said films to any of the other corporations who are parties thereto; and that, when said original negatives shall have served the purposes of such deposit and shall have been used to the fullest extent for the use and benefit of all of the parties to the agreement, then the negatives shall, upon the written demand of plaintiff, be redelivered to plaintiff. It is further provided that the present contracts now in existence between the two distributing companies, with reference to the distribution and exhibition of the prints, are modified as in this agreement expressly provided, and that, except as modified, the existing contracts shall remain in full force. The distributing companies became insolvent, and plaintiff brought this action for the return of the films and for damages caused by their detention. The defendant admitted the ownership of the plaintiff, but

claimed a lien upon the films for work, labor and services performed upon the order of the distributing companies and also for work, labor and services performed upon other films not owned by the plaintiff. At the trial the jury returned a special verdict consisting of the following answers to three questions submitted to them, namely: " Question 1. What was the value of the negatives in February, 1926? Answer: $25,000. Question 2. What is the amount of the plaintiff's damage, if any? Answer: $5,000. Question 3. Did the defendant do work upon plaintiff's negatives at the request, with the consent, or with the knowledge of the plaintiff or its agent? Answer: No." Upon this special verdict the trial justice directed a general verdict for the plaintiff awarding it possession of the property with the damages found by the jury, namely, $5,000. Defendant appealed, and, upon the argument, plaintiff stipulated to waive the damages. Upon this record the judgment should be reversed and a new trial ordered. Pursuant to the recently enacted amendment of the Lien Law (§ 188),* the defendant laboratory had a statutory lien upon the work done by the defendant upon the negatives owned by the plaintiff. The above agreement expressly provided that the plaintiff's films were to be deposited with the defendant for the very purposes of affording the distributing companies the opportunity of ordering work from the defendant upon these films, so that the plaintiff not only consented to, but had knowledge of, this situation. No issue, therefore, can arise contrary to the facts shown by the agreement, the making of which is admitted. The plaintiff seeks to construe certain portions of this agreement as limiting the amount of the lien. It points to the provision regarding the additional payment of $1,000 to cover all services, including that for acting as depository. This provision of the contract, however, clearly relates to a limitation of the amount that may be charged by the defendant against the plaintiff for services as depository, and does not touch upon the right of the defendant to a lien for work done upon the films, upon the orders of the distributors. Plaintiff further suggests that defendant breached a portion of the agreement by failing to notify plaintiff every fifteen days of the quantity of positive prints ordered by the distributing companies. Plaintiff may have redress in so far as under proper pleadings it can show that it has suffered damage due to the breach of this provision of the agreement. But even if this breach be assumed to exist, it would not deprive the defendant of a right of lien. Defendant's right of lien, however, obviously would be no greater than the value of the work performed on these particular films. In the bill of particulars defendant apparently claimed for work, labor and services other than those performed upon these particular films. Plaintiff further urges that upon this record, so far as the right of lien may be shown, it appears to have been paid. In its reply, however, plaintiff did not plead the defense of payment and the cause was tried upon the issue whether the defendant had any right of lien and, if so, leaving the amount thereof to be determined upon a future reference. Inasmuch as the learned trial justice determined that the plaintiff did not have a right of lien, any question as to the amount was not litigated. It follows that the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

---

* Added by Laws of 1923, chap. 609.— [Rep.